**ORIGINAL**

# In the United States Court of Federal Claims

No. 14-710C

(Filed: October 6, 2014)

**FILED**

OCT - 6 2014

U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| LA QUETTA MARIA GOLDEN, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Pro Se; Sua Sponte Dismissal for Lack of Subject Matter Jurisdiction; RCFC 12(h)(3); Transfer Not in the Interest of Justice under 28 U.S.C. § 1631 |

La Quetta Maria Golden, Gulfport, Miss., pro se.

James Patrick Connor, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

Plaintiff, La Quetta Maria Golden (Ms. Golden or plaintiff), brings claims against the United States, challenging the actions of an employee in the Admissions Office of the Supreme Court of the United States. Plaintiff is proceeding without counsel.[1]

Following Ms. Golden's voluntary resignation from the Mississippi State Bar, she became ineligible to be a member of, and was subsequently disbarred from, the Bar of the Supreme Court of the United States. According to Ms. Golden, the Supreme Court did not provide her with notice of its intent to disbar her before making her disbarment publicly known on its website. In this action, Ms. Golden brings a constitutional due process claim based on the lack of notice, and a defamation of character claim for the internet publication of her disbarment.

---

[1] Although Ms. Golden is an attorney, she reports that she is no longer licensed to practice law. Compl. ¶ 2. Accordingly, the court treats Ms. Golden as a pro se plaintiff.

Shortly after filing this suit, Ms. Golden moved to transfer her complaint to the United States District Court for the District of Columbia.

For the reasons more fully explained below, the Court of Federal Claims lacks jurisdiction over plaintiff's claims. The court also finds that it is not in the interest of justice to transfer plaintiff's claim to the United States District Court for the District of Columbia. Accordingly, the court sua sponte dismisses plaintiff's complaint for lack of subject-matter jurisdiction.

I.   Background

Ms. Golden asserts that she was licensed to practice law in the state of Mississippi, Compl. ¶ 2, Aug. 6, 2014, ECF No. 1, and she was admitted to the Bar of the Supreme Court of the United States (Supreme Court Bar) in March 1998, id. ¶ 1. Eleven years later, in December 2009, she voluntarily retired from the practice of law. See id. ¶¶ 2, 14.

According to the Supreme Court, when Ms. Golden voluntarily resigned from her state Bar, she "became ineligible to be a member of the Supreme Court Bar." Compl. Ex. A, ECF No. 1-2 (July 1, 2013 letter to Ms. Golden in response to her disbarment complaint). In 2010, a employee in the Admissions Office of the Supreme Court (Admissions Office employee) issued an order directing Ms. Golden to show cause why she should not be disbarred from the Supreme Court Bar. See Compl. ¶ 4. Ms. Golden avers that because the Admissions Office employee mailed the notice to the wrong address, she never received it and thus did not respond to the show cause order. Id. On January 11, 2011, the Admissions Office employee entered "an order of suspension and disbarment of her law license." Id. ¶ 5.

Ms. Golden first became aware of her disbarment in May 2012, while she was perusing the internet. Id. ¶ 6. She contacted the Supreme Court seeking removal of the "unlawful disbarment" from the Court's records and from the internet, but she was unsuccessful in her petition. Id. ¶ 7; Ex. A.

On August 6, 2014, Ms. Golden filed her complaint in this court, asserting claims under both the Fifth and Fourteenth Amendments to the United States Constitution. See id. ¶ 9. She specifically alleges a claim for "deprivation of property without due process of law which mandates that its citizens receive proper notice and hearing." Id.

Ms. Golden further alleges that by making her disbarment publicly available on the internet, the Supreme Court has effected a defamation of her character. Id. ¶¶ 19-20.

Ms. Golden seeks monetary damages of $1.5 million. Id. ¶ 22. She also seeks equitable relief in the form of an order directing the Supreme Court to reverse the

disbarment and instead "allow [her] to resign her United States Supreme Court license without any impunity against her license or her character." Id. ¶ 21.

On August 22, 2014, Ms. Golden filed a motion to transfer. Mot. Transfer ¶ III, ECF No. 3. She requests a transfer of her complaint to the United States District Court for the District of Columbia, because she now believes this court lacks jurisdiction over her claims. Id. ¶ I. Defendant filed no response to plaintiff's motion to transfer before time for doing so elapsed. The motion to transfer is ripe for consideration.

The court first examines the issue of jurisdiction and then considers whether transfer is appropriate.

II.   Court of Federal Claims Subject-Matter Jurisdiction

   A.   Legal Standards

The complaint of a pro se plaintiff is generally held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the "leniency [afforded to a pro se litigant] with respect to mere formalities" does not permit a court to "take a liberal view of . . . [a] jurisdictional requirement and set a different rule for pro se litigants." Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987). "The court should interpret a pro se plaintiff's complaint liberally, but, nonetheless, a plaintiff must present some set of facts upon which a claim for relief can be based." Aptus Co. v. United States, No. 05-106C, 2005 WL 6112638, at *4 (Fed. Cl. June 27, 2005) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Pentagen Techs. Int'l Ltd. v. United States, 175 F.3d 1003, 1005 (Fed. Cir. 1999) ("[B]ecause of pro se litigants' unfamiliarity with legal requirements, we interpret liberally and excuse errors reflecting such unfamiliarity.").

Subject-matter jurisdiction, which "involves a court's power to hear a case," may "never be forfeited or waived." United States v. Cotton, 535 U.S. 625, 630 (2002). In evaluating subject-matter jurisdiction, "the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (internal quotation marks omitted). Moreover, the court may question its own subject-matter jurisdiction at any time. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Folden, 379 F.3d at 1354 ("Subject-matter jurisdiction may be challenged at any time . . . by the court sua sponte.").

The Tucker Act provides for this court's jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

3

28 U.S.C. § 1491(a)(1) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff must, therefore, satisfy the court that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (internal quotation marks omitted).

The party invoking a court's jurisdiction bears the burden of establishing it, and must ultimately do so by a preponderance of the evidence. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

B.   Discussion

Ms. Golden has alleged due process violations under the Fifth and Fourteenth Amendments, as well as a tort claim for defamation of character. As explained below, this court lacks jurisdiction over all of the claims asserted in this action.

The Federal Circuit has held that this court lacks jurisdiction to hear due process claims alleged under either the Fifth or Fourteenth Amendment. LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (finding no jurisdiction for alleged violations of rights under the Due Process Clauses of the Fifth and Fourteenth Amendments as "they do not mandate payment of money by the government"). The decisions of the Federal Circuit are binding on this court. See Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005).

This court is also subject to the limitations set forth in the statute conferring jurisdiction. As expressly excepted from the conferred jurisdiction under the Tucker Act, the "Court of Federal Claims [does not] have jurisdiction to render judgment upon any claim against the United States in cases . . . sounding in tort." 28 U.S.C. § 1491(a)(1). An allegation of defamation is a tort claim and thus is outside this court's jurisdiction. See Woods v. United States, 122 F. App'x 989, 991 (Fed. Cir. 2004) ("The Court of Federal Claims is a court of limited jurisdiction, and claims sounding in tort, such as defamation, are outside the jurisdiction of the court."); Byers v. United States, 4 F. App'x 763, 766 (Fed. Cir. 2001) ("[D]efamation . . . [is a] tort claim[]. The trial court, therefore, correctly dismissed [this] claim[] for being outside its jurisdiction."). The court is without jurisdiction to hear Ms. Golden's tort claim for defamation of character.

It is noted that this court also has no authority to grant the equitable relief Ms. Golden seeks. As the Federal Circuit explained: "[E]quitable relief [in a Tucker Act suit]

4

must be 'an incident of and collateral to' a money judgment. Stated another way, the Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (internal citations omitted).

Absent jurisdiction, the court cannot hear the claims alleged by Ms. Golden in her complaint.

III.   Transfer Under 28 U.S.C. § 1631

    A.   Legal Standards

A court must transfer a civil action to another jurisdiction pursuant to the transfer statute, if three conditions are met: (1) the transferor court lacks jurisdiction, (2) the transferee court would have had jurisdiction at the time the original case was filed, and (3) it would be in the interest of justice to transfer the case. 28 U.S.C. § 1631 (2012); see also Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005) (stating that there is a "statutory requirement that [a] transfer be considered to cure jurisdictional defects" and that a trial court may order such transfer sua sponte).

Proper venue in the alternative forum of a district court is defined by statute. The governing statute provides that a civil action may be brought in "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2) (2012). The events of which plaintiff complains occurred in Washington, D.C. See Compl. ¶ 1. Thus, the district court to be considered for a transfer is the United States District Court for the District of Columbia.[2]

In determining whether a transfer is in the interest of justice, the Federal Circuit has explained:

> The phrase "if it is in the interest of justice" relates to claims which are nonfrivolous and as such should be decided on the merits. Frivolous claims

---

[2] This is also the district court to which Ms. Golden has requested this court transfer her complaint. Mot. Transfer ¶ III. Ms. Golden cited no authority to support her transfer request. This court considers a motion to transfer under 28 U.S.C. § 1631. See, e.g., Rodriguez v. United States, 862 F.2d 1558, 1560 (Fed. Cir. 1988) (stating that when considering a motion to transfer an action originally brought in this court, the three-part test of 28 U.S.C. § 1631 is appropriate); Johnson v. United States, 105 Fed. Cl. 85, 96 (2012) ("In ruling on a motion to transfer, the court must weigh whether the case satisfies the three prerequisites of 28 U.S.C. § 1631."). The ensuing transfer analysis serves as the analysis for Ms. Golden's motion.

include "spurious and specious arguments" and "distortion and disregard of the record and opposing authorities, [which] indicate plainly that the present appeal does not rest on the razor's edge of frivolity, but falls clearly on the side of the frivolous."

Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987) (alteration in original) (internal citations omitted).

This court has said that "[w]hen [it] . . . must decide whether to transfer or dismiss a case, [it] must make a general assessment of whether the case has a potentially valid claim." Riles v. United States, 93 Fed. Cl. 163, 166 (2010) (internal quotation marks omitted).

B. Discussion

A suit against the United States may be maintained only where the United States has expressly waived sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (internal citations omitted). See also United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"); McAlister v. Potter, 843 F. Supp. 2d 117, 122-23 (D.D.C. 2012) ("[Plaintiff] needs to identify a waiver of sovereign immunity in order to recover money damages.").

The United States has waived its sovereign immunity for certain claims, in particular for those claims brought under "the basic quadrumvirate of remedies" consisting of Bivens, the Federal Tort Claims Act (FTCA), the Administrative Procedure Act (APA), and the Tucker Act. Meredith v. Fed. Mine Safety & Health Review Comm'n, 177 F.3d 1042, 1055 (D.C. Cir. 1999). These are available for those claiming legally redressable injury from federal action (or inaction). Id.

The court now considers whether any of Ms. Golden's claims could have been brought under the FTCA, the APA or the Tucker Act.[3]

---

[3] Ms. Golden has not alleged a Bivens claim. "In Bivens, the Supreme Court held that plaintiffs may have a cause of action against federal officials who, while acting under the color of law, violate the plaintiffs' Fourth Amendment right to be secure against unreasonable searches and seizures, even if no statute authorizes such relief." Doe v. Rumsfeld, 683 F.3d 390, 394 (D.C. Cir. 2012) (citing Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)).

6

1. The Federal Tort Claims Act

The United States has not waived sovereign immunity under the FTCA for "[a]ny claim arising out of . . . abuse of process, libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h) (2012). Defamation is a variant form of the torts libel and slander. See, e.g., Gardner v. United States, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000) ("[Appellant's] defamation claim against the United States is barred, because suits for libel or slander are prohibited under the Federal Tort Claims Act."); Smalls v. Emanuel, 840 F. Supp. 2d 23, 33-34 (D.D.C. 2012) ("[C]ourts in this Circuit uniformly dismiss misrepresentation and defamation claims against the United States [brought under the FTCA].").

Nor does the FTCA provide a vehicle through which Ms. Golden might bring her constitutional claims for violation of the Due Process Clause. See, e.g., Benoit v. U.S. Dep't of Agric., 577 F. Supp. 2d 12, 26 (D.D.C. 2008) (stating that the United States "has not waived its sovereign immunity to damages claims of violations under the Constitution" including plaintiffs' claims for due process of law under the Fifth and Fourteenth Amendments to the United States Constitution), aff'd, 608 F.3d 17, 20-21 (D.C. Cir. 2010) ("The plaintiffs wisely take no issue with the district court's holding that suits for damages against the United States under the . . . Constitution are barred by sovereign immunity . . . .").

Moreover, in defending against a tort claim, the United States is statutorily "entitled to assert any defense based upon judicial . . . immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled." 28 U.S.C. § 2674 (2012). Ms. Golden's allegations against the United States are based on the actions of one named Admissions Office employee. See Compl. ¶¶ 1, 4-7.

The Court of Appeals for the District of Columbia Circuit has held that clerks, like judges, "are immune from damage suits for performance of tasks that are an integral part of the judicial process." Sindram v. Suda, 986 F.2d 1459, 1460-61 (D.C. Cir. 1993). The D.C. Circuit has stated further that "[I]mmunity applies to all acts of auxiliary court personnel that are basic and integral part[s] of the judicial function, unless those acts are done in the clear absence of all jurisdiction." Id. at 1461 (internal quotation marks omitted).

The acts of the Admissions Office employee about which Ms. Golden complains include mailing her a show cause order to what she claims was the wrong address and later disbarring her from practice before the Court. Such tasks are regularly associated with maintaining a court's Bar, are an integral part of the judicial process and fall within the jurisdiction of the Court. See id. That the acts may have been performed in error

7

does not deprive the actor of judicial immunity. See Wagshal v. Foster, 28 F.3d 1249, 1253 (D.C. Cir. 1994) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991)).

If the Admissions Office employee had been a named defendant in this suit, he would have been able to rely on the defense of judicial immunity. Correspondingly, the United States is entitled to do so as well. See 28 U.S.C. § 2674 (2012); see also Richardson v. United States, No. 12-1408, 2012 WL 3835868, at *1 (D.D.C. Aug. 27, 2012) (dismissing a FTCA claim for the act of a court clerk because the United States was entitled to the same judicial immunity afforded to the court clerk), aff'd, 516 F. App'x 2 (D.C. Cir. 2013).

For these reasons, Ms. Golden has no claim against the United States under the Federal Tort Claims Act.

    2.    The Administrative Procedure Act

Ms. Golden also requests an order directing the Supreme Court to reverse her disbarment and to allow her to resign as a member of the Supreme Court Bar. See Compl. ¶ 21.

Although the APA does not permit claims against the United States for money damages, it does permit, in some circumstances, claims for injunctive relief. 5 U.S.C. § 702 (2012). To this end, the APA provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

Id. (emphasis added).

Expressly exempt from the definition of agency, however, are "the courts of the United States." 5 U.S.C. § 701(b)(1)(B) (2012). Thus, the APA provides no vehicle by which Ms. Golden could seek an order for injunctive relief from the Supreme Court.

Moreover, the District Court for the District of Columbia has stated that it is "aware of no authority for the proposition that a lower court may compel the Clerk of the Supreme Court to take any action." In re Marin, 956 F.2d 339, 340 (D.C. Cir. 1992) (per curiam) (affirming lower court's dismissal for "lack of subject matter jurisdiction to

review any decision of the Supreme Court or its Clerk"); see also Reddy v. O'Connor, 520 F. Supp. 2d 124, 132 (D.D.C. 2007) ("[A]lthough judicial immunity does not apply to requests for injunctive relief (see Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)), the Court plainly lacks jurisdiction to compel official action by the U.S. Supreme Court justices or their staff.").

### 3. The Tucker Act

As with this court, the Tucker Act provides the district courts with limited jurisdiction over certain claims. Specifically, it provides that district courts shall have original jurisdiction of

> [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1346(a)(2) (emphasis added).

For a number of reasons, Ms. Golden may not bring her claims under the Tucker Act in a district court.

First, Ms. Golden requests money damages of $1.5 million, an amount which far exceeds the $10,000 statutory limit on damages for an action brought in federal district court under the Tucker Act. See 28 U.S.C. § 1346 (a)(2); see also Franklin-Mason v. Mabus, 742 F.3d 1051, 1054 (D.C. Cir. 2014) ("[I]nvoking the Tucker Act is a non sequitur because where . . . a suit involves a claim for money damages over $10,000, the Act waives the government's sovereign immunity only in the Court of Federal Claims.").

Second, as was previously discussed, see supra Part II.B, Ms. Golden may not maintain a defamation of character claim under the Tucker Act. Cases sounding in tort, such as defamation, are expressly excluded by the statute. See 28 U.S.C. § 1491(a)(2).

Finally, "the Due Process Clause [does not] provide[] a substantive right to compensation from the United States, which would be necessary to support a claim under the Tucker Act." Martinez v. Bureau of Prisons, 444 F.3d 620, 623 (D.C. Cir. 2006) (per curiam) (citing United States v. Mitchell, 463 U.S. 206, 216-17 (1983); see also Van Drasek [v. Lehman, 762 F.2d 1065, 1070 (D.C. Cir. 1985)]).

IV.   Conclusion

A review of the case law in the Court of Appeals for the District of Columbia Circuit and the District Court for the District of Columbia makes clear that plaintiff could not maintain a claim for either Due Process Clause violations or defamation of character were her case transferred. Nor could the district court consider ordering the Supreme Court of the United States to reverse its disbarment of Ms. Golden. Thus, the court finds that it is not in the interest of justice to transfer Ms. Golden's complaint to the United States District Court for the District of Columbia.

For the foregoing reasons, the court lacks jurisdiction over plaintiff's claim, and transfer of plaintiff's complaint is not in the interest of justice.

Plaintiff's motion to transfer is **DENIED**, and plaintiff's complaint is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

IT IS SO ORDERED.

*Patricia E. Campbell-Smith*
PATRICIA E. CAMPBELL-SMITH
Chief Judge